MAX SCHWARTZ, Respondent, v. SANTIAGO P. CAHILL, as Receiver of the HOUSTON RESTAURANT CO., INC., Appellant.

First Department, November 17, 1916.

Receiver of corporation — sale of assets and lease of business premises by order of court — when purchaser assumes payment of arrears in rent — terms and bill of sale construed — when landlord as purchaser cannot recover arrears of rent from receiver — evidence — construction of terms of sale at time thereof — parol evidence — erroneous exclusion of terms of sale — word plain in meaning but ambiguous as to application.

Where the temporary receiver of an insolvent corporation which had been engaged in the restaurant business, continued the business by direction of the court, and both the insolvent corporation itself and its receiver being in arrears for rent for the restaurant premises, the receiver advertised and sold the business, good will and lease at public auction, under terms of sale, and by a bill of sale executed in his representative capacity and which purported to convey only the right, title and interest of the insolvent and his own right, title and interest, as receiver, so that there was no covenant with respect to title, and it was expressly provided that the sale was subject to an assignment of the lease as security for a loan, and also that the lease was sold subject to the claims of the landlord for rent due and owing, said arrears amounting to over $4,000, the landlord on purchasing the assets of the business on such sale for a sum much below the rent due, discharged the receiver from liability for arrears of rent and the right of action to recover the sum became merged in the greater estate.

In an action by the landlord to hold the receiver for the arrears of rent, it was error to exclude evidence to show that at the sale the plaintiff, through his agent and attorney, made it understood that by the terms of sale any purchaser was to assume the payment of arrears of rent.

Moreover, if that were the case, it would be inequitable that the landlord should bid in the property by means of such announcement with little or no competition, and then be allowed to repudiate the obligation to pay the rent himself.

As the sale was made without covenant with respect to title, but was merely a quitclaim of all the right, title and interest of the corporation and its receiver, the latter was under no obligation to disclose to purchasers the fact that there was rent in arrears.

As the actual bill of sale must be construed in the light of the terms of sale, it was error for the court to exclude the latter, but when they are in the record, marked for identification, the Appellate Division may correct the error without a new trial, provided there be no other error requiring a retrial.

As the receiver's sale was made by direction of the court, and was a public and not a private sale, the terms and bill of sale should not be construed so as to make the receiver liable to the purchaser for arrears of rent, and parol evidence should have been admitted to clear up any ambiguity between the terms "subject to the amount of rent" and "subject to the claim" of the landlord for rent contained in the respective instruments.

An ambiguity in a written contract may arise from words which are plain in themselves, if they are uncertain when applied to the subject-matter of the contract.

APPEAL by the defendant, Santiago P. Cahill, as receiver, from a determination and order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 26th day of April, 1916, affirming a judgment of the City Court of the City of New York in plaintiff's favor.

*John Delahunty,* for the appellant.

*Joseph I. Green,* for the respondent.

LAUGHLIN, J.:

In a proceeding for the dissolution on the ground of insolvency of the Houston Restaurant Co., Inc., a domestic corporation, which leased the buildings known as Nos. 257 to 263, inclusive, East Houston street, in the borough of Manhattan, New York, with the exception of a part not material to the question presented for decision, from the plaintiff for ten years from the 1st day of May, 1914, and conducted a restaurant on said premises, the defendant was appointed temporary receiver and entered into possession on the 24th day of September, 1915,

and so continued until the twenty-ninth day of October thereafter, when he sold the lease, fixtures, furniture and other property at public auction by direction of the court, and the plaintiff, the landlord, purchased them and took possession. The annual rent reserved in the lease from the plaintiff to the restaurant company was $14,000, payable in monthly installments varying in amount according to the season of the year. At the time the receiver took possession the restaurant company was in arrears for rent accrued to the extent of $2,711.30, and the rent at the rate provided in the lease for the period of occupation by the receiver would be $1,508.67. The plaintiff at the sale of the lease and other property paid his bid, which was $1,500, in cash and a bill of sale of the property was executed and delivered to him by the receiver. Thereafter and on the 27th day of January, 1916, the plaintiff brought this action to recover the rent for use and occupation during the period the receiver was in possession, claiming the amount stipulated in the lease; and without evidence other than the provisions of the lease, with respect to the value of the use and occupation, he recovered on that theory.

The defendant in his answer set forth his appointment as temporary receiver and alleged that he was authorized by the court to continue the business and admitted that the rent which accrued during his occupancy was $1,508.67; that the total amount of accrued rent on the 29th day of October, 1915, when he surrendered possession to the plaintiff, both for the period of his occupancy and for the unpaid rent prior thereto, was $4,219.97; and he alleged that on the 29th day of October, 1915, he sold the lease and all the assets of the company, with the exception of the book accounts and bills receivable, at public auction by direction of the court and that the plaintiff became the purchaser, his bid being $1,500, which he paid; and he further alleged that the sale of the lease was expressly made subject to the amount of rent due the plaintiff as landlord to the date of sale, including the rent for which this action was brought. The defendant also pleaded two counterclaims, one for goods sold to the plaintiff by the company and the other for goods sold to the plaintiff by defendant as receiver. The former was disallowed and the latter allowed.

The defendant offered in evidence the terms of sale under which the lease was purchased by the plaintiff, but the evidence was excluded on objection interposed by plaintiff; and the terms of sale were marked for identification and are in the record.

By the bill of sale executed by the receiver to the plaintiff the receiver sold only *the right, title and interest* of the restaurant company, and his *right, title and interest* as temporary receiver in and to the lease; and it was expressly provided that the sale was subject to an assignment of the lease by the restaurant company to the Ferdinand Munch Brewery as collateral security for a loan of $6,000, made by the brewery to the restaurant company, upon which a balance of $5,190 remained due and unpaid, and it was further provided in the bill of sale as follows: "Said lease is also sold and conveyed by me, as Temporary Receiver, subject to the claim of said Max Schwartz, Esq., as Landlord, for rent due and owing him, under and by virtue of the provisions of said lease, up to and including the 29th day of October, 1915, amounting to the sum of Four thousand Two hundred and nineteen and 97/100 ($4,219.97) Dollars." Counsel for appellant contended that the proper construction of the provisions of the bill of sale, even without the aid of the terms of sale which had been excluded, imposed upon the purchaser the obligation to pay the accrued rent, and that the purchaser being the creditor, the indebtedness for arrears of rent was forthwith discharged, and furthermore that the lease having been purchased by the landlord, became merged in his greater estate, and that no right of action for rent in arrears remained in him. The court, however, disagreed with that construction of the bill of sale. Counsel for appellant thereupon offered to prove the circumstances attending the sale and the construction at that time placed upon the terms of sale by the auctioneer *at the request of plaintiff's agent and attorney,* and the conversations which took place at that time between the plaintiff's agent and attorney and the defendant and his attorney with respect to the terms of sale and of the proposed bill of sale, for the purpose of showing that by the terms of sale as then considered and understood by the parties

the purchaser was to assume the payment of the arrears of rent aggregating $4,219.97. On objection interposed by counsel for the plaintiff the evidence was excluded and an exception was duly taken by the appellant. Thereupon counsel for plaintiff moved to dismiss the first counterclaim upon the ground that it would constitute an offset against the rent due from the company prior to the occupation by the receiver; and the motion was granted. The plaintiff thereupon consented to allow the second counterclaim for $93.70, and moved for the direction of a verdict for the balance of the rent for the period of the receiver's occupation of the premises, amounting to $1,415.60. The motion was granted and counsel for defendant duly excepted.

The terms of sale which were excluded but marked for identification, after describing the lease and the term for which it was to run and the provisions with respect to a renewal, contained the following: " This lease is sold subject to the amount of rent, due the Landlord, for rent to date, amounting to Four thousand two hundred nineteen and 97/100 ($4,219.97) Dollars." This was followed by a provision to the effect that the lease was also sold subject to an assignment as collateral security for an indebtedness upon which there remained due the sum of $5,190, substantially as stated in the bill of sale. Following these provisions there was a representation that the lease was a valuable asset for the reason that the rooms in the upper portion of the building, with the exception of some bedrooms, were rented to various fraternal orders for lodge purposes, and that the building also contained a large dance hall, and that the revenue from the rental of the lodge rooms and dance hall yielded, according to the information received by the receiver, the sum of $8,500 per annum; and that the brewery held a chattel mortgage on the " tables, chairs, tableware, bar fixtures and other articles used in connection with the business, heretofore conducted by the Houston Restaurant Company, which is also security for the payment of the said balance," as security for which the lease was assigned; and that those articles were sold subject to the lien of the brewery under the chattel mortgage.

As already appears, the receiver at the time of the sale owed

to the plaintiff the rent for use and occupation by him during the receivership for which the recovery has been had in this action, which exceeded the amount which the plaintiff bid and paid on receiving the bill of sale; and yet, so far as appears, no claim was made by the landlord at that time that he retained such claim against the receiver and no suggestion or offer was made to have such claim applied in extinguishment of the bid, as by a tender of a receipt for the amount of the bid to be applied in reduction of the rent due or otherwise.

The learned counsel for the respondent contends that the clause in the bill of sale to the effect that the lease was sold subject to the claim of the landlord for arrears of rent is to be construed the same as a conveyance of real estate subject to a mortgage in which case it is well settled that the purchaser does not assume the indebtedness. (*Belmont* v. *Coman,* 22 N. Y. 438.) In *Dingeldein* v. *Third Avenue R. R. Co.* (37 N. Y. 575) the Court of Appeals held that there was a plain distinction between such a clause in a deed and in an agreement with respect to the sale of personal property on the ground that the reason for the rule in conveyances of real estate is that a recital to that effect is necessary to qualify the liability of the grantor on his covenants; and that the rule was not applicable to a sale of personal property without covenant with respect to the title, and that the construction of such a clause depends upon the intention of the parties. It was also declared by the court in that case that "There is a significant difference between the expression 'subject to a mortgage,' and 'subject to the payment of a certain debt.'" And it was held that the transfer of the property of a partnership consisting of a railroad franchise and equipment, "subject to the payment by the" purchaser "of all the money which the partnership are bound to pay" rendered the purchaser liable to the creditor for the indebtedness of the copartnership. That decision unanimously reversed a unanimous decision of the General Term of the Superior Court (9 Bosw. 79) holding that whatever liability there might have been on the part of the vendee to the vendor, the agreement between them did not constitute an assumption of the indebtedness so as to give a right of action to the creditor against the vendee;

but in the case at bar the creditor is the purchaser and if, as claimed in the points for the appellant, he induced the auctioneer to announce to purchasers that by purchasing they would assume and be obliged to pay the rent to the landlord and thus was enabled to bid in the property with little or no competition, it would be most inequitable to allow the recovery to stand. The construction of the agreement in the *Dingeldein Case* (*supra*) was predicated upon the ground that the property was not transferred subject to any lien which would explain the use of the clause in the agreement; and that, therefore, the only purpose of that clause was to show that the indebtedness was to be assumed by the purchaser. In that case it is true the clause was to the effect that the transfer was made subject to the *payment* of the indebtedness by the purchaser. The clause in question is the same in substance, I think, although express words to the effect that the transfer is subject to payment of the rent by the purchaser are not used. According to the terms of sale the lease was to be sold subject to the " *amount* " of rent unpaid. For what purpose was the sale to be made subject to it unless it was intended that it was subject to the payment thereof by the purchaser, or in other words that it was to be sold on condition that the purchaser pay it? In the case at bar, however, as in the *Dingeldein Case* (*supra*) there was no covenant with respect to the title, and there was no necessity on that ground, therefore, of attempting to qualify the title. There was here merely *a quitclaim* of all the right, title and interest of the company and of the receiver; nor was the lease subject to *any lien* on account of the rent in arrears. There was, therefore, no obligation on the part of the receiver to disclose to the purchaser the fact that there was rent in arrears. If it were not for the reference in the bill of sale to the assignment of the lease as collateral security I think it would be quite clear that the intention of the parties as shown by the bill of sale, particularly in view of the fact that it was a receiver's sale, was that the purchaser should take the lease subject to the payment by him of the rent in arrears or on condition that he pay it, and that an agreement by him to pay might fairly

be implied. A doubt with respect to the true construction arises, however, owing to the reference to the assignment of the lease as collateral security and to the amount of the indebtedness as security for which it was assigned; and to the further fact that the possession of any purchaser other than the landlord would be subject to a dispossess proceeding for the non-payment of the rent. If, however, it were not intended that the purchaser should pay the arrears of rent there was, as I have already said, no obligation on the part of the receiver to draw attention to the arrears of rent; and if the only purpose of the reference to the arrears of rent was to inform the purchaser that his possession might be defeated on account of there being rent in arrears it is not probable that such an explicit provision with respect to the amount of the arrears would have been inserted. It may be observed that provisions calculated to deter bidders or to reduce the amount to be realized on a sale at public auction are not ordinarily needlessly voluntarily inserted in the terms of sale by the vendor. The bill of sale is to be construed in the light of the terms of sale, and it was, therefore, error to exclude the latter; but the terms of sale being in the record that error may be corrected without a new trial, provided there be no other error requiring a new trial.

The receiver, by the terms of sale, was evidently desirous of impressing upon bidders that the lease with this long term to run and with the privilege of a long renewal period was very valuable; and he attempted to disclose everything affecting its value by informing purchasers that it had been pledged for the payment of an indebtedness as security for which a chattel mortgage of certain of the personal property sold was also pledged; and that he was selling the lease "subject to the amount of rent, due the Landlord, for rent to date," the amount of which he specified. I am of opinion that there is a difference between the construction of the terms of sale and bill of sale with respect to *the indebtedness* for which the lease was pledged and *the claim* of the landlord for accrued rent. With respect to the former the lease was sold subject to its *assignment* as collateral security which was merely notice that it had been so assigned and of the amount for which it had been

pledged; and the sale was not subject to that indebtedness but merely to the assignment of the lease; but with respect to the rent the provisions are quite different, for the lease "is sold subject to the amount of rent, due the Landlord." I am of opinion that this means subject to the payment of the rent by the purchaser, and although the phraseology was changed somewhat in the bill of sale wherein the provision is "subject to the claim" of the landlord for rent, still I think it was intended that the claim of the landlord should be paid by the purchaser. I concede that if this were a private sale the construction I have indicated would be very doubtful, but in view of the fact that it is a receiver's sale by direction of the court, I think the terms of sale and the bill of sale should not be construed as leaving the receiver liable as between him and the purchaser for the arrears of rent, and that it was intended that the purchaser of the lease should assume the payment thereof and relieve the trust estate from further liability with respect thereto. If, however, the bill of sale construed in the light of the terms of sale be not susceptible of this construction I think the parol evidence offered should have been received upon the theory that in the terms of sale and in the bill of sale the phrase, in the one case, "subject to the amount of rent," and in the other, "subject to the claim of" the landlord for rent, gives rise to ambiguity. Perhaps the phrase "subject to" an indebtedness or claim in and of itself may not be said to be ambiguous and this is doubtless so where it is apparently used in the ordinary sense and meaning of the words; but the words were not appropriate here and were not used in their ordinary sense and meaning according to the construction claimed by either party. Moreover, according to the terms of sale, the sale was to be subject to "the amount" owing to the landlord. A word or phrase which has a distinct and clear meaning may become ambiguous owing to the subject-matter with respect to or the connection in which it is used in a contract, and in such case the contract may be said to be ambiguous and the subject of parol evidence to explain the sense in which words were used, and to aid the court in construing them. In Ruling Case Law the rule is stated as follows: "An

ambiguity in a written contract calling for construction may arise as well from words plain in themselves, but uncertain when applied to the subject-matter of the contract, as from words which are uncertain in their literal sense." (10 R. C. L. 1071, citing *Klueter* v. *Joseph Schlitz Brewing Co.*, 143 Wis. 347.) No action would lie to reform the terms of sale and it is exceedingly doubtful whether the bill of sale could be reformed. It is evident, therefore, that appellant has no other remedy.

It follows, therefore, that the determination of the Appellate Term should be reversed and the judgment of the City Court reversed, and judgment be entered dismissing the complaint upon the merits, with costs to the appellant in all courts.

CLARKE, P. J., McLAUGHLIN, DOWLING and PAGE, JJ., concurred.

Determination of Appellate Term reversed, with costs; judgment of City Court reversed, with costs, and judgment directed dismissing the complaint on the merits, with costs. Order to be settled on notice.