## JOHN B. DINGELDEIN, Appellant, *v.* THE THIRD AVENUE RAILROAD COMPANY, Respondents.

*Contract—Indebtedness—Assumption—Liability to Third Party.*

Where in a contract between A. and B., B., upon a valuable consideration received from A., promises to pay a certain sum of money to C., the latter may maintain an action for the recovery of the same.

Where a partnership owned a valuable franchise, and had rendered themselves liable to pay a certain sum of money to a third party; and on sale of their said franchise had stipulated that the purchaser should assume and pay such liability, held, that such third party might recover the same of said purchaser.

On the 1st day of January, 1853, the corporation of the city of New York made a grant to certain parties for a railroad in the Third Avenue in said city.

Thereupon, the grantees, in connection with other persons, including the Plaintiff, formed a partnership for constructing and operating the road, and called themselves the Third Avenue Railroad Company.

The city of New York, prior to June, 1853, had directed a sewer to be built in the Third Avenue, and caused proposals to be advertised for doing the work.

The company deeming it to their interest to have the building of the sewer under their control, made arrangements whereby several of the company put in bids for the work. The two lowest bids were by Benjamin and Dingeldein, for the company.

On the 21st of June, 1853, the company passed a resolution directing their committee on sewers, consisting of Hart, Reynolds, and the Plaintiff, to have the sewer constructed on the most favorable terms, and any deficiency in the cost of the work which they were thereby directed to have done, over and above what the city might pay, should be paid by the company.

Pursuant to this resolution, the contract was awarded to Plaintiff as the lowest bidder.

Hart and Reynolds, two of the committee, were offered as security on both bids, and the contract was made by Plaintiff, on his bid, on the 29th of June, 1853.

Dingeldein began work under the contract on 9th of July, 1853, and completed it in August, 1854.

He received from the city $7,062.28, and the cost of building the sewer was $10,938.17.

On the 8th of October, 1853, the Defendants were incorporated, and on the same day the former partnership transferred all their property, including the grant to the newly incorporated company, for the consideration of $1,170,000. That deed of transfer, which was also executed by the Defendants, contained an acceptance by the Defendants of the transfer, and was " subject to the payment by said parties of the second part, of all the money which the Third Avenue Railroad Company (partnership) are, by a resolution adopted by said company, bound to pay on account of sewers in the Third Avenue, the contracts for the construction of which were awarded to Oscar F. Benjamin, one of which sewers is now being constructed by John B. Dingeldein."

While the work was in progress, the officers of the Defendants gave directions in regard to it, and thereby increased the expense.

The cause was tried before a referee, who reported for the Plaintiff, to the amount claimed in the complaint.

The referee found, as matter of fact, that the Defendants were cognizant of the Plaintiff's work during its progress; their agents or officers were often, if not daily, during its progress, on the said road, between the termini of his sewer; that after October 8, 1853, the Defendants' superintendent gave the Plaintiff directions about carting away the dirt, and keeping the track clear, which directions were known to and recognized by the Defendants' president.

On appeal to the General Term of the Superior Court of the city of New York, that Court set aside the report and ordered a new trial.

The Plaintiff now appeals to this Court, stipulating that

if the judgment be affirmed, judgment absolute may be rendered against him.

*John W. Edmonds* for the Appellant.

*Clarkson N. Potter* for the Respondents.

HUNT, CH.J.—Two principles applicable to this case must now be deemed as settled.

First, that in a contract between A. and B., wherein B. assumes and undertakes, upon a good consideration from A., to pay a certain sum of money to C., the latter may maintain an action against B. to recover the money, and this although the arrangement was originally made without his knowledge or assent. This principle has been established, both where personal property was the subject of the contract, and where real estate was conveyed, upon which there was a mortgage, the amount of which the grantee promised that he would pay to the mortgagee (Lawrence *v.* Fox, 20 N. Y. R. 268; Burr *v.* Beers, 24 N. Y. R. 178; Hartly *v.* Harrison, id. 171; Russell *v.* Pistor, 3 Seld. 171).

Secondly, that where land is conveyed simply "subject to a mortgage," and there is no express agreement to pay, no agreement will be implied, and no action involving a personal liability can be maintained by the mortgagee against the buyer (Belmont *v.* Coman, 22 N. Y. R. 438).

The Plaintiff bases his claim upon the first of these principles.

The Defendants resist it upon the second.

If the article of transfer of October 8, 1853, may be fairly held to contain a promise to pay the Plaintiff's debt, he may recover upon it. If not, he must fail, or seek some other ground. In the case of Belmont *v.* Coman (supra), it was held that the transaction amounted simply to a conveyance of the equity of redemption of the land.

The deed contained full covenants, and the recital of the mortgages was to qualify simply the grantor's liability on his covenants. The conveyance of the land, with its liability to the incumbrances specified, was the evident and sole intention of the

parties.  The deed containing no express promise to pay the liens, it was held, and rightly, that none should be implied.

In the present case, both the language of the instrument, and the intent of the parties, are different.

Here was no incumbrance on the property conveyed.  The contract was merely the personal obligation of the partnership, and was not a lien upon the property conveyed.  The intent to qualify a liability arising from such lien upon the property conveyed, could not therefore exist.

The only conceivable intent with which this sewer contract was thus referred to, was to furnish the evidence that the new company would pay to Dingeldein the amount which the partnership was bound to pay under the resolution referred to.

The fact that in Belmont v. Coman the words were necessary to qualify the grantor's liability, and that here there was no such occasion, gives a different rule for the construction of the words in the two cases.

The language, too, is different, and may well bear a different construction.

In Belmont v. Coman the land is conveyed "subject to the mortgage."

There is a significant difference between the expressions "subject to a mortgage," and "subject to the payment of a certain debt."

In the present case, the property of a partnership, consisting of a railroad franchise, a road partly built, cars, horses, sleighs, harness, and licenses, is transferred to a corporation, subject to the *payment* by the parties of the second part of all the money which the partnership are bound to pay on account of sewers, specifying the claim.

They do not take the property "subject" to an incumbrance of the sewer debt, for there is no such incumbrance.

It formed no lien on the property sold, and had no connection with the subject, unless it was intended to be assumed.  They take it subject to "the payment" by themselves of the sewer debt—i. e., to a liability by themselves to pay the debt.  They under-

take to relieve the partnership from the payment of this debt, and to make themselves liable or responsible for it. That is the subjection or service to which they bind themselves.

No other meaning can be given to this language, and no other intent can be imagined in the minds of the parties, than that the corporation made itself responsible for the payment of the sewer debt. The whole clause is irrelevant and useless except upon this theory.

In my opinion the referee was right in holding that this language amounts to an agreement to pay, and the General Term were in error in reversing the judgment.

The Appellant insists that, under the circumstances of the case, the Plaintiff could recover, although there had been no mention of the contract between the parties, and cites many authorities to sustain his position. Without passing on this question, I prefer to place my judgment upon the ground that there is a contract between the parties, by virtue of which the Plaintiff is entitled to recover.

The Respondents insist that the agreement between Dingeldein and the partnership was in violation of public policy, and illegal and void.

This is not set up as a defence in the case, and no such issue was before the referee, and we are not called upon to decide it. The referee has not found that there was fraud, or bad faith, or facts which necessarily constitute illegality or fraud.

All intendments and presumptions are to be made in favor of the report, and none against it.

The judgment of the General Term, ordering a new trial, should be reversed, and the judgment upon the report of the referee affirmed.

All concur.

Reversed.